# ROBERTSON v. GORDON.

CONTRACTS; INDIANS; ESTOPPEL.

Gordon and Robertson, two of a number of attorneys interested in the prosecution of an Indian claim, entered into a written contract to divide fees which should be allowed. Subsequently, they united with the other attorneys in contracts providing for the distribution of fees in event of anticipated congressional action upon the subject. The act of Congress of June 21, 1906 (34 Stat. at L. 325, chap. 3504),

provided that $60,000 should be paid the attorneys interested, and required the court of claims to distribute that sum among them as they might be entitled. Although Robertson did not formally intervene in the proceeding in the court of claims, he testified therein concerning the services he had performed, and was awarded $2,000 by the court, while Gordon was awarded $14,000. In a suit by Robertson, in which he claimed that under his contract with Gordon the sums awarded both should be added together and equally divided between them, it was *held* that in view of his action subsequent to the contract, he was bound by the award of the court of claims, and was not entitled to share in the award to Gordon.

No. 2077. Submitted February 14, 1910. Decided March 1, 1910.

HEARING on an appeal by the complainant from a decree of the Supreme Court of the District of Columbia, sitting as a court of equity, dismissing a bill of complaint to establish an interest in a certain fund.                          *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is one of three suits by different parties to recover a part of the fee awarded to Hugh H. Gordon, and to Gordon and Miller, administrator of Levi Maish, by the court of claims, on May 25th, 1908, for services rendered to the Indians of the Colville Reservation in the State of Washington. The first suit, that of *Gordon* v. *Gwydir,* has been determined at the present term. The other suit, that of the Indian Protective Association against Gordon and Miller, was consolidated for hearing in the court below with the present case. Separate decrees were rendered, and appeals have been separately taken. The complete history of the Indian contract with Maish and Gordon, and the award of the court of claims thereunder, will be found in the report of the case of *Butler* v. *Indian Protective Asso.* (ante, 508) and in the opinion in *Gordon* v. *Gwydir* (present term) ante, 284.

The bill in the present case sets out the contract between the Indians and Maish and Gordon, for the prosecution of the claim of the Indians against the United States for the sum of $1,500,000, May 12th, 1894. Said contract was to expire in

ten years.   In the appropriation bill, approved June 21st, 1906 (34 Stat. at L. 325, chap. 3504), the determination of the fees payable by the Indians to the attorneys representing them was referred to the court of claims.

The contract on which this suit is brought is set out in the bill as follows:

March 28th, 1906.

This agreement made between F. C. Robertson and Hugh H. Gordon; Witnesseth, that they shall share equally in all moneys appropriated by Congress, or allowed by the Interior Department, which may accrue to said Gordon or said Robertson as attorney fees, growing out of the rendition of services to the Colville tribe of Indians, whether allowed under the Maish Gordon contract with said tribes, or on any other theory whatsoever, which said interest is to inure to either party, no matter in whose name such allowance is made.   Both parties hereto to mutually labor to secure such allowance.   Out of said Robertson's share he agrees to compensate R. D. Gwydir by a reasonable compensation.   The fees to be divided between said Robertson and said Gordon, as herein provided, shall be the net sum accruing to said Gordon, after settling with other attorneys under contracts heretofore made by said Gordon.

F. C. Robertson,
Hugh H. Gordon.

On May 25th, 1908, the court of claims adjudged that the total amount due by the Indians to attorneys was $60,000, among whom the same was divided.   $14,000 were awarded to Hugh H. Gordon; $6,000 to Miller, administrator of Maish; and $2,000 to Frederick C. Robertson.   Robertson claims that, by virtue of the contract aforesaid, the sums awarded to him and to Gordon should be added together and equally divided between them.   The payment of the funds was stayed, and the same were afterwards delivered to receivers appointed in the course of these proceedings to hold the same pending the final determination of the claims thereto.

The defenses set up in the answer of Gordon are that the services stipulated for in the contract sued on related to the procuring of a new contract with the Indians, the former contract of Maish and Gordon having expired by limitation. And, further, that the complainant, Robertson, submitted his claim for services to the court of claims, had an award made to him, and is bound thereby.

After a hearing on pleadings and evidence, the court dismissed bill.

*Mr. George H. Patrick* for the appellant.

*Mr. A. A. Lipscomb* and *Mr. J. B. Archer* for the appellee. *Mr. Gordon* appeared in proper person.

Mr. Chief Justice Shepard delivered the opinion of the Court:

Our conclusions from the testimony are these: Robertson was brought into the negotiation by Gwydir, after the contract of Maish and Gordon with the Indians had expired by limitation, in an attempt by Gordon to have Gwydir make a new contract with the Indians, similar to the old one, and either in the name of Gordon and associates, or Gwydir and associates.

The contract between Gordon and Robertson, of March 28th, 1906, was made when all of the parties claiming to represent the Indians were working to secure from Congress a direct appropriation of 15 per cent of the entire amount appropriated to the Indians. Gordon had interested Butler and Vale and others with him, and his relations with them had become strained. He suspected Butler and Vale of an intention to secure the bulk of the allowance. There was also another attorney, one Nuzum, who claimed to represent the Indians under some arrangement independent of and conflicting with the Maish and Gordon contract. While the matter of the appropriation was pending in Congress, to wit on April 3d, 1906, Gordon,

Butler, Vale and Robertson, executed the following agreement with each other:

The undersigned hereby stipulate and agree that their respective claims for services rendered the Colville Indians be submitted to the conference committee of the Senate and House of Representatives on a *quantum meruit,* and agree to stand to and abide by any award which shall be made in the premises, and, in case no award shall· be made, the rights of the said parties shall· remain unaffected.

This the 3d day of April, 1906.

Hugh H. Gordon,
For himself and associates.
Marion Butler,
For himself and associates.
F. C. Robertson,
Butler & Vale.

Subsequently, it seems, they had hopes, by joining with Nuzum, of obtaining the appropriation before referred to, of $150,000, and the following agreement was then made:

Washington, D. C., Apr. 12, '06.

This agreement made and entered into between Marion Butler on his own behalf and on behalf of his associate counsel, R. W. Nuzum, on his behalf and on behalf of his associates, and Hugh Gordon and F. C. Robertson; Witnesseth:

That whereas, each of the said parties mentioned herein have rendered services as attorneys for the Colville Indians, and claim the right to participate in any appropriation made to pay said attorneys' fees;

Now, therefore, Provided the sum of one hundred and fifty thousand ($150,000) is allowed for the payment of attorneys representing said tribe of Indians then of the said sum eighteen thousand seven hundred and fifty ($18,750) dollars is to be paid to the said R. W. Nuzum for himself and associates, and nine thousand three hundred and seventy-five ($9,375) dollars

to Hugh Gordon, and nine thousand three hundred and seventy-five ($9,375) dollars to F. C. Robertson; the remainder of said sum to be distributed by the said Marion Butler as he elects. Should the appropriation be less, then this agreement is to be the basis of the distribution, sharing *pro rata* in such diminished sum as the percentage is thereby diminished.

In witness whereof we have hereunto set our hands and seals at the city of Washington, the day and date above written.

　　　　　　　　　　　　　R. W. Nuzum.　　(Seal)
　　　　　　　　　　　　　Hugh H. Gordon.　(Seal)
　　　　　　　　　　　　　F. C. Robertson.　(Seal)
　　　　　　　　　　　　　Marion Butler.　　(Seal)

The scheme to induce Congress to make this appropriation failed, and the final result was the action of the conference committee of the two Houses of Congress, which was incorporated in the act of June 21st, 1906, referring the matter of the attorneys' compensation to the court of claims. When the Butler and Vale petition was filed in that court, Robertson's depositions were taken. He testified fully as to his services in the Indian claim, and says that he paid one third of the cost of taking the depositions. He was advised by Butler and Vale not to intervene in the said cause, as Gordon and others subsequently did, they assuring him that he would be protected by them under their agreement made before Congress acted. Butler and Vale, it will be remembered, expected to have the entire amount of the fee awarded to them, for distribution. Disappointed by the result in the court of claims, they attempted to recover the entire amount after award by the proceeding heretofore referred to. That attempt was finally defeated. See *Butler* v. *Indian Protective Asso.* ante, —. The record of the proceeding in the court of claims was not introduced in evidence, beyond a copy of the final judgment. The testimony shows that Robertson did not file a formal petition of intervention, but his deposition was taken in proof of his services, and the award of $2,000 was made to him therefor. On April 15th, 1907,

he wrote to Butler and Vale, whom he understood as representing him also, as follows:

Spokane, Washington, April 15, 1907.

Messrs. Butler & Vale,
                    Washington, D. C.

Gentlemen:—

I transmit to you a copy of a deposition I ask to be filed in this case. I sent the original to the Attorney General. The testimony of Mr. Gordon is not plain as to my sharing with him out of his recovery, and I desire that this be done.

On the same day he wrote to the Assistant Attorney General, who, by the terms of the act, was required to represent the Indian interest, referring to the fact that it was not clear to him that Gordon recognized him as having become associated in the Indian service, until after Nuzum arrived in Washington. He inclosed his deposition, referring to which he said: "I wish you to see that this is filed, for really I stand in the position of an intervener, and have an independent right to protect my own rights in connection with the cocounsel in the case. I am satisfied that you, as the representative of the government, desire this matter to be fairly presented in this case, so that such award as may be made will be made by the court of claims, with a full understanding of the relation of the parties, and I send this directly to you as a government officer, because they are originals, and are of the utmost importance to me." As the actual deposition given by Robertson must have been returned to the court by the officer taking the same, it is probable that this deposition was a sworn statement, with exhibits, by Robertson of his services and interests. It may have been one prepared in response to a request of Butler and Vale in a letter to him of July 25th, 1906. They say in this letter:

July 25th, 1906.

F. C. Robertson, Esq.,
                    Spokane, Washington.

Dear Sir:—

We have heretofore written you requesting a statement of the

services which you have rendered the Colville Indians, and forward you a copy of the petition filed with this court. We have also suggested the line of services that should be shown to be effective in procuring the judgment, and that is, services before committees of Congress and Departments, as opposed to services "before Congress" or individual Congressman to influence Congressional action; the latter class of services is, as you know, lobbying, and cannot be considered by the court.

The law sending the case to the court requires that service shall be proven, and that in payment the kind of service shall be considered; so that it is vital, if you have rendered any services to the Indians, that it shall be affirmatively shown. And before we undertake to take testimony it is, of course, essential that we shall have before us a complete view of the case in this regard.

(Robertson's reply to this letter, too lengthy to copy, indicates his expectation that Butler and Vale would protect his interests).

The testimony, however, does not show with any certainty what this inclosed deposition actually was. During his examination as a witness in this case, Robertson was shown a certified copy of his deposition that was taken in the regular manner before the court of claims, and the same was admitted. It appears that he then testified that he became interested in the Maish and Gordon contract in 1903, and that his arrangement with Gordon was "entirely verbal,"—"nothing documentary." He undertook to explain this by saying that he was not asked as to any subsequent contract with Gordon, but simply as to when he originally became interested in the matter. His evidence as to any service to Gordon before the date of the contract sued on,—namely March 28, 1906,—clearly began in the attempt, through Gwydir, to have a new contract made with the Indians, for which Gwydir was to be compensated.

The contract of March 28th, 1906, seems broad enough in its terms to apply to fees that might be received by Gordon under direct appropriation or otherwise, on account of his Indian con-

tract, and would, we think, warrant a recovery by Robertson, if it were not for the subsequent contracts and proceedings. When the new agreements of April 3d, and April 12th, 1906, before, stated, were made, two situations were contemplated. The first was that the matter of the award might be considered by the conference committee, and made on a *quantum meruit* basis, in which event they were to stand and abide by any award so made. Hoping by joining with Nuzum, who claimed under some other contract, to obtain an appropriation of the entire sum of $150,000, they entered into the agreement providing for a different distribution, in which Gordon and Robertson were separately provided for. These new agreements took the place of all former ones between the parties; one to control in one probable event of Congressional action, the other to control in another. The result provided for in the agreement of April 3d occurred, but not exactly as anticipated.

The *quantum meruit* basis was adopted by Congress, but, instead of determining the several amounts by its own action, it referred that determination to the court of claims. It is not necessary to decide whether the contract of April 3d embraced any other determination, on the basis of *quantum meruit,* than that expected to be made by Congress directly, and would not apply to its determination by reference to the court of claims.

Whatever view may be taken of this, certainly those who appeared in that court and presented their claims for adjudication, and received separate and distinct awards therefor, are bound by their action and the judgment rendered thereon.

The proceedings on the petition of Butler and Vale were informal, and there was no occasion that they should be otherwise. Although Robertson did not appear by formal pleadings, it is clear that he considered himself a party, testified in support of his claims, and anticipated an award therefor. He did not undertake to magnify the services of Gordon in the expectation of subsequently sharing with him, but magnified his own by giving them an earlier date than he was entitled to under his original contract with Gordon. His interests were apparently represented by Butler and Vale. As a separate award was made

to him and to Gordon on the *quantum meruit* basis, we think that his conduct, though lacking a formal pleading, was sufficient to bind him by the judgment rendered, and that he is estopped to contradict that judgment.

Agreeing with the conclusion of the learned trial justice, as we do, the decree will be affirmed, with costs.    *Affirmed.*

An appeal to the Supreme Court of the United States was allowed April 5, 1910, on application of the appellant.